IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:12-cr-00022-RP-TJS |
| Plaintiff, | ) | |
| | ) | RULING ON PETITION TO |
| vs. | ) | REVOKE DEFENDANT'S |
| | ) | PRETRIAL RELEASE |
| JEFFREY ALAN SOBOROFF, | ) | AND ORDER FOR DETENTION |
| | ) | |
| Defendant. | ) | |

The above matter is before the Court following hearing on April 16, 2012. The government was represented by Assistant U.S. Attorney Clifford Cronk. Defendant appeared with his attorney, Assistant Federal Defender Terrance McAtee. The government offered as Exhibit 6 a series of recorded messages left by Mr. Soboroff for his pretrial services officer, U.S. Probation Officer Tara L. Lindamood. The Court held the record open to give defense counsel an opportunity to listen to the recordings. The Court has been advised by defense counsel that he has no objection and Exhibit 6 is received as part of the hearing record.

**I.**

Defendant is charged in a two-count indictment with theft of government funds and failure to disclose information to the Social Security Administration in violation of 18 U.S.C. § 641 and 42 U.S.C. § 1383a(a)(3). In a nutshell, it is alleged that defendant continued to collect disability payments while incarcerated in the custody of the Iowa Department of Corrections serving a state prison sentence. He failed to disclose that fact

and continued to collect money to which, the government alleges, he was not entitled.

The hearing record evidence, including the recorded messages left for Ms. Lindamood, reveals the following. Ms. Lindamood was assigned as Mr. Soboroff's pretrial services officer. As is her practice, following Mr. Soboroff's initial appearance at which he was released on conditions of release Ms. Lindamood met with Mr. Soboroff. She generally encouraged him to stay in touch with her. Mr. Soboroff has taken more than full advantage of this invitation.

Mr. Soboroff contacted Ms. Lindamood by telephone frequently, sometimes several times a day. The recorded messages on Exhibit 6 tend to be lengthy (up to about seven minutes at the longest) and meandered through many subjects. Mr. Soboroff expressed many frustrations and complaints to Ms. Lindamood. He complained that the Social Security Administration would not give him a Social Security card to replace one which had not been returned to him by Clinton County officials, the latest of many grievances he has had against the agency over the years. He said he needed the card to obtain public assistance. In the recorded messages Mr. Soboroff frequently mentions Wanda, a person about whose welfare he was concerned. Mr. Soboroff complained about those he believed were requiring Wanda to live in a "crack house." Mr. Soboroff was angry at David Bane with whom Mr. Soboroff had left

his property and money while in prison. Mr. Soboroff believed Mr. Bane had stolen his money. Mr. Soboroff wanted the return of his property, particularly the "tools of my trade." Mr. Soboroff is a musician. He told Ms. Lindamood he needed to get his guitars and other musical equipment so he could supplement his income. Mr. Soboroff's conditions of release restricted him from contacting potential witnesses, among them Mr. Bane, a particular frustration. He talked of contacting Mr. Bane through a friend or enlisting the police to retrieve his property.

Mr. Soboroff also complained about his court-appointed counsel, the injustice of the present charges against him, and about a person he claimed had embezzled money from the sale of his home. In his recorded messages Mr. Soboroff spoke frequently of his website and its past use by him to publicly identify and accuse people he thought had engaged in misconduct or had harmed him, including a Davenport city official. From Mr. Soboroff's perspective Ms. Lindamood was not much help with any of these things and he came to think of her as part of the problem.

Mr. Soboroff's communications to Ms. Lindamood turned much sharper, and more vulgar, after the "pool cue" incident on April 9, 2012. Mr. Soboroff was stopped by Deputy Marshals outside the courthouse as he was walking, carrying a bag. They were concerned it might contain a weapon. Mr. Soboroff gave consent to search the bag which contained only a pool cue. He was allowed to

go on his way, but became very angry as he thought about the episode. He expressed his anger in escalating, expletive-laden phone messages left for Ms. Lindamood. The sequence of these is not very clear from Exhibit 6, but in the course of them he said Ms. Lindamood was responsible for the incident (in fact, she had nothing to do with it). He complained of being harassed and accused Ms. Lindamood of being "on the side of the cocksuckers." He demanded to know whose idea it was to send the Marshals after him. He told Ms. Lindamood she had a choice, either she "rat out one of your friends" or he would say it was her idea. He said she had until the end of the day to identify who thought he was carrying a weapon, adding "you will find out who that asshole was and you will tell me that asshole's name and then your name will come off my website and their name will go on." He said something about putting Ms. Lindamood's name in the "funny papers" if she did not comply which Ms. Lindamood assumed would be the website he had told her about early in their dealings. In one of the several messages left by Mr. Soboroff on April 9 he ended by saying to Ms. Lindamood: "you are just all a bunch of f*****g pigs, aren't you." He told her he would speak in a language she would understand, at which point he mimicked the snorting and squealing of a pig. Mr. Soboroff then asked if that sounded like supper time with Ms. Lindamood's mother.

Ms. Lindamood felt she had been threatened and filed the petition seeking revocation. The U.S. Attorney approved and a warrant for Mr. Soboroff's arrest was issued.

Marshals went to Mr. Soboroff's residence on April 12 to execute the arrest warrant. They knocked and announced their presence and asked Mr. Soboroff to come to the door. Mr. Soboroff refused to do so. The Marshals then forcibly entered the residence. They encountered Mr. Soboroff sitting at the foot of a bed with several knives nearby. Mr. Soboroff was told to get on the floor a couple of times. He refused and then was tasered.[1] The circumstances of his arrest were included in an amended petition for revocation of pretrial release [22] filed on April 12.

On April 13 Ms. Lindamood filed an addendum to the petition [23]. On April 11 she had accessed Mr. Soboroff's website.[2] She found an entry quoted in the addendum which identified Ms. Lindamood by name as the person Mr. Soboroff held responsible for his "inexcusable persecution." Mr. Soboroff then referred to Ms. Lindamood and other "minions" involved in his persecution as "in actuality being the same kind of Nazi scum who

---

[1] In a statement in Court Mr. Soboroff attributed his failure to respond to the Marshals' directions to the influence of pain medication he had been taking.

[2] On his website Mr. Soboroff uses the alias "Dimitri Ivonabitch."

found that a piano wire noose was their just reward after their trials at Nuremberg. . . ."

**II.**

The violation alleged is "Threatening an Officer of the Court." (Petition [17]). The Court must enter an order of revocation and detention if, following hearing, the Court:

> (1) finds that there is --
>
> **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> **(B)** clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that --
> **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). A rebuttable presumption that a defendant should be detained on the ground of dangerousness arises if there is probable cause to believe that while on release the defendant committed a federal, state or local felony. *Id.*

At the outset it is important to appreciate that Mr. Soboroff has a First Amendment right to communicate his opinions about the Social Security Administration, the present prosecution, the judicial process and the harassment to which he believes he has

6

been subjected. His speech loses its protected status only when it passes into the realm of unlawful threats and intimidation.

In the Advice of Penalties and Sanctions section of the Conditions of Release form signed by Mr. Soboroff on March 26, 2012 [8] he was told that it was a federal felony to, among other things, "intimidate or attempt to intimidate a[n] . . . officer of the court." Mr. Soboroff signed an acknowledgment indicating he was aware of this fact.

Under the first clause of 18 U.S.C. § 1503(a) it is a federal felony to endeavor by threatening communication "to influence, intimidate, or impede . . . court officers in the discharge of their duties . . . ." *United States v. Aguilar*, 515 U.S. 593, 598 (1995). As a probation officer Ms. Lindamood is an officer of the court and in the course of her duties was responsible for supervising Mr. Soboroff. Mr. Soboroff knew this and of the pending judicial proceeding against him. He threatened Ms. Lindamood in an effort to intimidate or influence her to use her position as a probation officer to obtain the identity of those responsible for the search of his bag. He carried out his threat by posting a communication on his website falsely accusing Ms. Lindamood by name as the person responsible for his "persecution," comparing her to "Nazi scum" and suggesting she should meet the same fate. The Court can speculate that not many people access Mr. Soboroff's website and those who do would not pay much attention to

7

what he says, but there is probable cause to believe that all the elements of a § 1503(a) first clause offense are present. The same evidence establishes probable cause to believe Mr. Soboroff's conduct amounted to the crime of harassment under Iowa Code § 708.7(1)(a)(1).

It is true as the government argues that the failure of Mr. Soboroff to obey the commands of the Marshals at his door, or later in his apartment, may also have been a crime, and that his efforts to contact Mr. Bane through a friend (or lawyer as Mr. Soboroff contended at hearing) may have amounted to a conditions of release violation, but the Court is less concerned with these.

The finding that there is probable cause to believe Mr. Soboroff committed a federal felony implicates the rebuttable presumption that no condition or combination of conditions of release will assure[3] the safety of any other person or the community. The presumption is not rebutted. Putting the presumption aside, Mr. Soboroff's criminal history reflects five convictions for harassment since 1997, among them two for "telephone harassment" and one for "harassment by false report." Over the years defendant has, by the Court's count, been charged with seventeen other harassment offenses of varying description which

---

[3] In addressing the sanctions for a violation of a release condition the Bail Reform Act in § 3148(b) uses the term "assure," not "reasonably assure" as found in the detention hearing standard set out in § 3142(e).

were dismissed. The number of such arrests suggests a recurring pattern of conduct. Mr. Soboroff has one or two (it is not clear) Iowa felony convictions for "threats" in 2008. Also in 2008 Mr. Soboroff was convicted of extortion in Clinton County, Iowa, and sent to prison for up to five years. A felony charge of arson in the first degree is pending in the Iowa District Court for Clinton County with a trial date of May 21, 2012. According to the original pretrial services report, in connection with this offense defendant is also charged with possession of an incendiary/explosive device with intent and assault with intent to injure a peace officer. Defendant thus has a long history of harassment, threats, and extortion. The history of Mr. Soboroff's dealings with Ms. Lindamood indicates he is not supervisable. All of this together with the circumstances of the present violation make it very likely that if defendant were to remain on pretrial release under the supervision of another probation officer he would engage in the same type of behaviors which have led to the present situation and characterized his criminal history.

The Court is reluctant to detain a person on the comparatively minor federal charges Mr. Soboroff is charged with in this Court. But no other potentially viable release plan presents itself. It is also very possible there is a mental health component to Mr. Soboroff's proclivity for threats and harassment as the original pretrial services report suggests. The Court does not

believe, however, that the communications to and about Ms. Lindamood are to be dismissed as mere rant.

### III.

To summarize, the Court finds there is probable cause to believe Mr. Soboroff committed a federal felony, a first clause violation of 18 U.S.C. § 1503(a) and the state law crime of harassment. The circumstances of these offenses considered with the factors set forth in 18 U.S.C. § 3142(g) support the conclusions there is no condition or combination of conditions of release that will assure defendant will not pose a danger to the safety of any other person or the community, and that because of his unsupervisability Mr. Soboroff is unlikely to abide by other conditions of release, particularly the condition that he not engage in similar law violations. Defendant's pretrial release is revoked and he is ordered detained in the custody of the U.S. Marshals Service.

IT IS SO ORDERED.

Dated this 18th day of April, 2012.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE